Filed 3/26/26  P. v. Huffman CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FOURTH APPELLATE DISTRICT

# DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E084901 |
| v. | (Super. Ct. No. RIF2302421) |
| BRAEDIN MCKINNEY HUFFMAN, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Brian Hill, Judge.

(Retired judge of the Santa Barbara Super. Ct. assigned by the Chief Justice pursuant to

art. VI, § 6 of the Cal. Const.)  Affirmed.

Dan E. Chambers, under appointment by the Court of Appeal, for Defendant and

Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General,

Charles C. Ragland, Assistant Attorney General, Steve Oetting and Daniel J. Hilton,

Deputy Attorneys General, for Plaintiff and Respondent.

# I.

## INTRODUCTION

During a traffic stop, officers searched defendant and appellant Braedin Huffman's car and found an unregistered and loaded firearm in the glove box. After unsuccessfully moving to suppress evidence of the gun, defendant pled guilty to one misdemeanor count of concealing a firearm in a vehicle (Pen. Code, § 25400, subd. (c)(6)). The trial court sentenced defendant to time served, with one year of probation.

Defendant contends the trial court erroneously denied his motion to suppress. We disagree and affirm the judgment.

# II.

## FACTUAL AND PROCEDURAL BACKGROUND

Around midnight on a Friday night, Riverside Police Officer Hussey and his partner, Officer Butler, were on DUI patrol in downtown Riverside. They noticed a car with "dark front window tint" that appeared unlawful (see Veh. Code, § 26708, subd.), so they pulled the car over. When Officer Hussey approached the driver's side window, he noticed the driver (defendant) had "bloodshot, watery eyes." Officer Hussey also smelled a "strong" odor of "burnt marijuana," which suggested that "someone was smoking it inside" the car. Officer Hussey did not think there was marijuana in a container because the smell was not "localized." Instead, the "entire vehicle smelled like there was cannabis inside." Given the smell and the appearance of defendant's eyes, Officer Hussey suspected that defendant had been driving under the influence.

Officer Hussey asked defendant if he had been smoking or drinking, and he denied both. Officer Hussey noticed three other passengers in the vehicle and asked defendant if they had been "pregaming," meaning whether they had been smoking or drinking before going somewhere. Defendant did not answer whether the group had been "pregaming," and instead responded that he was the group's designated driver and they had come from Orange County. Officer Hussey then asked defendant to get out of the vehicle and perform a field sobriety test (FST). Officer Hussey also asked defendant's three passengers to get out of the vehicle as well.

Officer Hussey "ran" defendant's license for about a minute. There were no "hits" for defendant nor any outstanding warrants for him.

Officer Hussey then performed a FST on defendant for recent cannabis use. He checked for a "lack of convergence" in defendant's eyes, which is "one of the biggest red flags of recent cannabis use." Since Officer Hussey did not observe a lack of convergence in defendant's eyes, he concluded that defendant was not driving under the influence. As he finished the FST, Officer Hussey asked defendant why his eyes were glossy, and he said it was because he had been working on his car all day. Defendant then mentioned that the group was going out to celebrate the birthday of one of the passengers.

Because of the strong smell of burnt marijuana, Officer Hussey continued to believe there was an unlawful open container of marijuana in defendant's car, so he asked defendant if there was marijuana in the car. Defendant said there "probably" was

3

marijuana in the car, but he did not know where and it was not his. When asked how much marijuana there was, defendant said there was "less than an ounce." Officer Hussey asked defendant if Officer Butler could get the marijuana from the car. Officer Hussey and defendant walked over to where the three passengers were standing and asked the front-seat passenger if there was marijuana in the car, and she said she had some in her bag in the front. Officer Hussey asked her if there was anything else in the car, and she said there was a bottle of alcohol next to her bag.

Officer Butler began searching defendant's car from the front passenger side to look for the marijuana. He found an open bottle of liquor and an unopened can of alcoholic tea.[1] Officer Butler then found a black bag and asked the front passenger if it was her bag with the marijuana, and she confirmed that it was. In the bag, Officer Butler found a closed plastic container with marijuana.[2] Officer Butler then opened the glove box and found a handgun and then found a bong in the backseat of the car. The officers arrested defendant and his three passengers. The entire encounter, from the initial stop to the discovery of the firearm, lasted about seven to eight minutes.

---

[1] Defendant contends the record is unclear as to whether the bottle of alcohol was open, but Officer Hussey testified that it was open and his bodycam footage shows that it was nearly empty. (Defense Exh. B: 00:00:05.)

[2] There is no information in the record as to the quantity of marijuana in the container. And although there is no evidence in the record expressly stating that the container was closed when found, Officer Hussey stated he "didn't open it up" and "shook it," and his body camera footage shows that it was closed.

Defendant was charged with one count of concealing an unregistered and loaded firearm in his vehicle (Pen. Code, § 25400, subd. (a)). Defendant unsuccessfully moved under Penal Code section 1538.5 to suppress all evidence obtained from the search of the vehicle. The trial court (Hon. Robert Hill) found that the officers did not unduly prolong the stop. As to the vehicle search, the trial court found that (1) the officers had reasonable suspicion to stop defendant's car given the dark window tint, (2) Officer Hussey had reasonable suspicion to believe defendant was driving under the influence of cannabis given the odor of marijuana and defendant's watery, bloodshot eyes, and (3) for these reasons, plus the fact that Officer Hussey became "aware of the fact that marijuana [was] somewhere located in the vehicle," Officer Hussey had probable cause to search defendant's car for an open container.

Defendant later unsuccessfully moved under Penal Code section 995 to set aside the information on the same ground. As before, the trial court (Hon. Charles Koosed) again found: (1) the officers had reasonable suspicion to stop defendant's car given the dark window tint; (2) the traffic stop was not unduly long; (3) Officer Hussey has reasonable suspicion to believe defendant was driving under the influence of cannabis given the odor of marijuana and defendant's watery, bloodshot eyes; and (4) for these two reasons, Officer Hussey had probable cause to search defendant's car for an open container.

Finally, defendant unsuccessfully moved a third time to suppress the evidence, this time under Penal Code section 1538.5, subdivision (i). The trial court (Hon. Walter H.

5

Kubelun) found it was bound by the court's prior order denying the second motion to suppress and, in any event, both motions to suppress were properly denied for the court's stated reasons.

After pleading guilty to one misdemeanor count of concealing a firearm in a vehicle (Pen. Code, § 25400, subd. (c)(6)) and being sentenced to time served and one year of probation, defendant timely appealed.

III.

DISCUSSION

Defendant does not dispute that the officers lawfully pulled him over and Officer Hussey lawfully performed the FST. He contends, however, that (1) Officer Hussey unlawfully prolonged his detainment after he passed the FST and Officer Hussey concluded he was not driving under the influence and (2) the officers lacked probable cause to search his glove box. We disagree on both points.

A. *Standard of Review*

We defer to the trial court's findings of fact in ruling on a suppression motion if supported by substantial evidence. (*People v. Glaser* (1995) 11 Cal.4th 354, 362.) But we exercise our "'independent judgment,'" based on those factual findings, to determine whether a seizure or search was reasonable. (*People v. Castro* (2022) 86 Cal.App.5th 314, 319.) When, as here, the trial court denied a motion to suppress, we review the record in the light most favorable to the People. (*People v. Suff* (2014) 58 Cal.4th 1013, 1053.)

6

B. *Prolonged Detainment*

1. *Applicable Law*

A traffic stop can become unlawful when an officer prolongs that stop beyond the "'time reasonably required to complete [the stop's] mission,'" which is to address the traffic violation that justified the stop. (*Rodriguez v. United States* 575 U.S. 348, 357, quoting *Illinois v. Caballes* (2005) 543 U.S. 405, 407.) There is thus no precise limit on how long a traffic stop may last. (*People v. Ayon* (2022) 80 Cal.App.5th 926, 937 (*Ayon*).)

Instead, "'the question is whether the police diligently pursued a means of investigation reasonably designed to confirm or dispel their suspicions quickly.'" (*Ayon*, *supra*, 80 Cal.App.5th at p. 937.) But if the officer develops a reasonable suspicion of a different offense during the stop, the officer may prolong the stop for a reasonable amount of time to investigate the potential offense. (*Rodriguez v. United States*, *supra*, 575 U.S. at p. 357; *People v. Russell* (2000) 81 Cal.App.4th 96, 102 ["Circumstances which develop during a detention may provide reasonable suspicion to prolong the detention."].) However, the officer may not conduct checks unrelated to the traffic stop in a way that prolongs the stop "absent the reasonable suspicion ordinarily demanded to justify detaining an individual." (*Rodriguez v. United States*, *supra*, at p. 355.)

2. *Analysis*

We find no error in the trial court's conclusion that the stop was not unduly prolonged after defendant successfully completed the FST.

7

To begin with, the fact that the entire encounter from the stop to finding the gun took seven to eight minutes, only a few of which were after the FST, suggests that the detention was not unduly prolonged. (See *People v. Esparza* (2023) 95 Cal.App.5th 1084, 1087, 1098.) And the fact that defendant passed the FST did not dispel Officer Hussey's suspicion that there was an open container of marijuana in the car. That suspicion was reasonable given the strong odor of burnt marijuana emanating from defendant's car. (See *People v. Hall* (2020) 57 Cal.App.5th 946, 953.) Officer Hussey thus had lawful grounds to prolong the stop for a reasonable amount of time to investigate a potential open container violation.

Officer Hussey then permissibly investigated that concern over the next few minutes. Just after finishing the FST, Officer Hussey asked defendant why his eyes were glossy. About 25 seconds after finishing the FST, Officer Hussey asked defendant if there was marijuana in the car, and defendant said there "probably" was. Defendant then asked if he could get the marijuana, and Officer Hussey told him no, so they walked to the passengers and defendant asked them where it was. The front seat passenger said there was marijuana in her bag and, in response to Officer Hussey's question if there was "anything else," she admitted there was a bottle of alcohol. Only about 90 seconds elapsed between her admission and the completion of defendant's FST. As we explain below, by that point, the officers had probable cause to search defendant's vehicle. We therefore conclude the officers diligently and reasonably, and thus lawfully, prolonged defendant's stop after the FST to investigate a potential open container violation. (See

8

*Rodriguez v. United States*, *supra*, 575 U.S. at p. 357; *Ayon*, *supra*, 80 Cal.App.5th at p. 937.)

Three cases defendant relies on do not alter our conclusion. In *People v. Gyorgy* (2023) 93 Cal.App.5th 659, the officer stopped the defendant for an unsafe lane change and then—without any reasonable suspicion of a drug violation—asked the defendant about his criminal background and whether he was a sex offender registrant, patted him down, and used a police dog to sniff the defendant's car. There was simply no justification for prolonging the defendant's detention and the resultant search. There was likewise no evidence whatsoever of a drug violation that justified a prolonged stop and search after a traffic stop in *People v. Suggs* (2023) 93 Cal.App.5th 1360, 1362-1366, or *Ayon*, *supra*, 80 Cal.App.5th at pp. 940-944.

C. *Vehicle Search*

1. *Applicable Law and Standard of Review*

Warrantless searches are generally presumed to be unreasonable and unlawful. (*Robey v. Superior Court* (2013) 56 Cal.4th 1218, 1225.) Under the "automobile exception" to this general rule, however, a warrantless search of a lawfully stopped vehicle is permissible if the officer has probable cause to believe the vehicle contains contraband or evidence of criminal activity. (*Ibid*.) When an officer has probable cause to search the vehicle under the automobile exception, the officer "may conduct a probing search of compartments and containers within the vehicle whose contents are not in plain view." (*United States v. Ross* (1982) 456 U.S. 798, 800.) The People bear the burden of

9

proving that the automobile exception applies.  (*People v. Camacho* (2000) 23 Cal.4th 824, 830.)

To determine whether probable cause exists, we ask whether the totality of the circumstances show that there was a "fair probability that contraband or evidence of a crime will be found."  (*Illinois v. Gates* (1983) 462 U.S. 213, 238.)  Because this is an objective standard, the officer's subjective beliefs are irrelevant.  (*People v. Lee* (2019) 40 Cal.App.5th 853, 862.)

2. *Analysis*

Defendant does not dispute that the officers lawfully pulled defendant over, nor does he dispute that Officer Hussey lawfully required him to perform a FST.  Defendant is correct to do so because the officers reasonably believed his car's window tint was unlawfully dark, and the strong odor smell of burnt marijuana, coupled with defendant's glossy, bloodshot eyes gave Officer Hussey reasonable grounds to believe defendant was driving under the influence.  That, in turn, gave Officer Hussey reasonable grounds to require defendant to perform a FST to determine whether he was driving under the influence.

After performing the FST, however, Officer Hussey concluded that defendant was not driving under the influence.  Officer Hussey nonetheless suspected an open container violation because of the smell of burnt marijuana in defendant's car and his concern that defendant's passengers may have been "pregaming" by smoking marijuana in the car.  As he put it, even "if [defendant] was not under the influence, necessarily, in my opinion,

10

there is still cannabis, when I smelled burnt cannabis inside." Officer Hussey was concerned that, even "if [defendant] was not smoking prior to my stop, then he does have access to what is in the vehicle."

We first note that we disagree with the People and the trial court that Officer Hussey had probable cause to search defendant's vehicle for an open container violation *after* defendant passed the FST in part because of his bloodshot, watery eyes. Officer Hussey testified that, although he concluded defendant was not driving under the influence, he remained concerned there was an open container violation because of the smell of burnt marijuana and his suspicion that defendant's passengers were "pregaming." Nothing in Officer Hussey's testimony (nor anything else in the record) suggests that the officers continued the detention and investigation into a possible open container violation after defendant's FST because of his bloodshot, watery eyes. There is likewise no evidence in the record, from Officer Hussey or otherwise, that would support a finding that defendant had bloodshot, watery eyes because of an open container violation. Nor is there any evidence that Officer Hussey disbelieved defendant's explanation that his eyes were red and watery because he had been working on his car all day.

In short, the state of defendant's eyes contributed to and supported only Officer Hussey's decision to investigate whether defendant was driving under the influence. On this record, defendant's bloodshot, watery eyes did not play any role in determining whether there was probable cause to search defendant's vehicle for an open container

11

violation after he passed the FST.[3]

That leaves (1) the smell of burnt marijuana emanating from defendant's car, (2) his passenger's admission that she was carrying marijuana and alcohol on her in the car, and (3) Officer Hussey's suspicion that defendant's passengers might have been "pregaming" (smoking marijuana and/or drinking alcohol) in the car.

The smell of marijuana alone, without any indication that it had been used while driving, is insufficient to establish probable cause to search a vehicle for an open container violation.  (See *Blakes v. Superior Court* (2021) 72 Cal.App.5th 904, 912; *People v. Johnson* (2020) 50 Cal.App.5th 620, 634)  An admission that there is marijuana or alcohol in the car, without more, is also insufficient to establish probable cause to search a vehicle for an open container violation.  (See *People v. Moore* (2021) 64 Cal.App.5th 291, 300; *People v. McGee* (2020) 53 Cal.App.5th 796, 802; *People v. Shumake* (2019) 45 Cal.App.5th Supp. 1, 8; *People v. Lee*, *supra*, 40 Cal.App.5th 8at p. 856.)  There must be some other evidence of an open container violation.  (E.g., *People v. McGee*, *supra*, at p. 804 [officers saw "unsealed bag of marijuana in the passenger's cleavage"]; *People v. Fews* (2018) 27 Cal.App.5th 553, 562 [driver admitted half-burnt

---

[3] We do not suggest that bloodshot and/or watery eyes could be evidence of an open container violation in other circumstances.  Here, however, Officer Hussey never suggested that, *after defendant passed the FST*, his bloodshot, watery eyes indicated that there may be an open container of marijuana in his car.  Instead, Officer Hussey testified that defendant's bloodshot, watery eyes suggested that he might have been driving under the influence.  But that suspicion was dispelled after defendant passed the FST, and the state of defendant's eyes played no role in Officer Hussey's decision to continue investigating a potential open container violation after the FST.

12

cigar in his hand had marijuana].)

But probable cause is determined by looking at the totality of the circumstances. (*People v. Souza* (1994) 9 Cal.4th 224, 231.)  Here, there were several indicators that defendant and/or his passengers had an unlawful open container of marijuana.  First, Officer Hussey noticed a strong odor of freshly *burnt* marijuana immediately upon approaching defendant's vehicle, which indicated someone might have recently smoked marijuana in the car.  (See *People v. Moore*, *supra*, 64 Cal.App.5th at p. 300 ["[T]here is a recognized "'commonsense distinction between the smells of burnt and raw marijuana.""'"].)  Second, one of defendant's passengers admitted that she was carrying marijuana in the car's front seat, which further bolstered Officer Hussey's suspicion that someone had been smoking marijuana while defendant was driving.  Third, Officer Hussey had a reasonable suspicion that defendant's passengers might have "pregamed" (smoked marijuana) in the car for several reasons.  The car smelled heavily of burnt marijuana.  Defendant and his passengers were on their way from Orange County to celebrate a passenger's birthday in downtown Riverside.  They were stopped around midnight on a Friday known in an area known for nightlife, where, in Officer Hussey's experience, people "pregame" in their cars.  One of the passengers admitted she was carrying marijuana and alcohol with her in the car's front seat.  Most importantly, defendant did not deny that his passengers had been "pregaming" when Officer Hussey asked him if they had, but instead replied that he was the DD, which suggested that the passengers had "pregamed."  Coupled with the strong odor of burnt marijuana and the

13

front seat passenger's admission that she had marijuana in her purse, it was reasonable for Officer Hussey to believe that their "pregaming" included smoking marijuana in the car.

Taken together, these facts suggested a fair probability that the officers would uncover an open container of marijuana in defendant's vehicle.  They therefore had probable cause to search it.  (*Illinois v. Gates*, *supra*, 462 U.S. at p. 238; *People v. Diaz* (2023) 97 Cal.App.5th 1172, 1178.)  As a result, they had probable cause to search the vehicle's glove box.  (*United States v. Ross*, *supra*, 456 U.S. at p. 800; *People v. Moore*, *supra*, 64 Cal.App.5th at p. 302.)  The trial court therefore properly denied defendant's motion to suppress.

## IV.

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON
J.

We concur:

RAMIREZ
P. J.

MILLER
J.